Rod GANO, as Guardian Ad Litem for Rod Gano, a minor, Plaintiff,

v.

SCHOOL DISTRICT NO. 411 OF TWIN FALLS COUNTY, STATE of IDAHO; Board of Trustees for School District No. 411; Carl Snow, Superintendent of School District No. 411; Frank Charlton, Principal of Twin Falls High School for School District No. 411; Norman Thomas, Vice Principal of Twin Falls High School for School District No. 411; and Richard Baun, Dean of Men of Twin Falls High School for School District No. 411, Defendants.

Civ. No. 87–1306.

United States District Court, D. Idaho.

Nov. 5, 1987.

William R. Hollifield, Fred D. Decker, Dan C. Grober, Decker and Hollifield, P.A., Twin Falls, Idaho, for plaintiff.

Edward L. Benoit, Fritz A. Wonderlich, Benoit Alexander Sinclair Harwood & High, Twin Falls, Idaho, for defendants.

## MEMORANDUM DECISION

CALLISTER, Chief Judge.

The Court has before it the plaintiff's motion for preliminary injunction. The Court held an evidentiary hearing on October 30, 1987, and ruled from the bench that the motion would be denied. This memorandum decision will constitute the Court's written findings pursuant to Fed.R.Civ.P. 52(a).

The plaintiff, Rod Gano, a Twin Falls High School student, was requested by members of the senior class to draw a caricature of three administrators: (1) Twin Falls High School Principal Frank Charlton; (2) Vice–Principal Norman Thomas; and (3) Dean of Men Richard Baun. The plaintiff drew the caricature and it was transferred to T-shirts to be sold to other students during homecoming week.

One of those T-shirts was made a part of the record in this case. It shows the three administrators sitting against a fence labeled "Bruin Stadium, Home of the Bruins." Each administrator is holding a different alcoholic beverage and is acting drunk. While one administrator holds aloft a beer mug, another holds a wine cooler, while the third grasps a bottle of whiskey. A case of "light beer" sits nearby. A phrase, "It doesn't get any better than this," not coincidentally lifted from a television beer commercial, appears just below the caricature.

When the administrators discovered the T-shirts, and the plan to sell them to the students, they suspended the plaintiff. The suspension lasted two days, October 5 and 6, 1987, and the plaintiff returned to school on October 7, 1987. The unrebutted affidavits of the administrators establish that this disciplinary action has been removed from the plaintiff's file. For attendance purposes, the plaintiff was not cited for being absent on October 5 and 6, 1987. He is noted as being absent during second period on October 8, 1987. On that date he wore the T-shirt to school, and was told to go home and change shirts during second period. He wore the T-shirt again on October 15, 1987, and was sent home to change it. Although he was free to return to school without the T-shirt, he failed to return on October 16, 1987, and is listed as being absent on that date. If the plaintiff continues to wear the T-shirt, he will be sent home to change it. For the purposes of this case, there are no other absences or disciplinary actions at issue.

On October 16, 1987, the plaintiff filed this action along with a motion for preliminary injunction. The motion seeks to enjoin defendants "from suspending or interfering with the plaintiff's attendance at Twin Falls High School for wearing a T-shirt with the caricature on it until such time as those matters alleged by way of the verified complaint filed herein have been litigated or otherwise resolved."

The standard for obtaining a preliminary injunction in the Ninth Circuit was set forth in *City of Tenakee Springs v.*

*Block,* 778 F.2d 1402 (9th Cir.1985). There are two alternate tests, one of which must be met in order to grant a preliminary injunction. The first test requires that the Court find (1) the moving party will suffer irreparable injury if the injunctive relief is not granted; (2) there is a substantial likelihood that the moving party will succeed on the merits; (3) in balancing the equities the nonmoving party will not be harmed more than the moving party is helped; and (4) granting injunctive relief is in the public interest.

The second test requires the moving party to demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardship tips sharply in his favor. These two tests are not separate; they are the outer reaches of a single continuum. *Id.* at 1407.

█ The Court will employ the second test, and will examine first the plaintiff's chance for success on the merits. The plaintiff argues that his First Amendment freedom of speech right will be abridged if he is disciplined for wearing the T-shirt. Unfortunately, neither the plaintiff, nor plaintiff's counsel, was able to articulate the expression which was in danger of suppression. Did the T-shirt represent a political protest? Was it a criticism of administration policies? Testimony and argument from the plaintiff, his counsel, and other witnesses indicated that the T-shirts were not intended to criticize or be disrespectful to the administrators. What message is conveyed by the T-shirts?

The T-shirt portrays the three administrators with alcoholic beverages on school property during a homecoming activity. It is a misdemeanor to consume alcoholic beverages on school property at any school activity. *See* Idaho Code § 23–612. There is no evidence in the record that the three administrators have ever so imbibed. The plaintiff's T-shirt thus falsely accuses the three administrators of committing a misdemeanor. For this expression, the plaintiff demands protection. Is he so entitled? The United States Supreme Court has stat-

ed that students cannot be disciplined for wearing black armbands to protest the Vietnam War, but can be disciplined for making sexually explicit speeches at school assemblies. *Compare Tinker v. Des Moines Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) *with Bethel School Dist. No. 403 v. Fraser,* 478 U.S. ——, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). To understand these cases, one must first understand that discipline and debate are equally effective teaching tools. A robust exchange of ideas can only occur effectively within a civilized context. The school is actively engaged in teaching when it sets the bounds for proper conduct. As the United States Supreme Court stated in the *Bethel* case:

> The process of educating our youth for citizenship in public schools is not confined to books, the curriculum, and the civics class; school must teach by example the shared values of a civilized social order. Consciously or otherwise, teachers—and indeed the older students—demonstrate the appropriate form of civil discourse and political expression by their conduct and deportment in and out of class. Inescapably, like parents, they are role models. The schools, as instruments of the state, may determine that the essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech and conduct such as that indulged in [here].

In the present case, the school has determined that the T-shirt—which is clearly offensive—cannot be tolerated. In this state, schools are statutorily charged with teaching about the "effects of alcohol." *See* Idaho Code § 33–1605. When the school disciplines the plaintiff for wearing a T-shirt falsely depicting the administrators in an alcoholic stupor, it is engaged in its statutory duty. It is teaching the students that falsely accusing one of being drunk is not acceptable. The administrators are role models, as stated by the United States Supreme Court, and their position would be severely compromised if this T-shirt was circulated among the students.

This case appears to clearly fall within the *Bethel* precedent, and thus the Court finds that the plaintiff has only a minuscule chance of success on the merits.

With regard to the balance of harm, the plaintiff would be effectively prevented from falsely accusing the administrators of being drunks. The Court cannot find that the plaintiff suffers much harm by being so prevented. When this case is examined in its entirety, the plaintiff has so little success on the merits and would suffer so little harm that the Court finds that a preliminary injunction is not warranted. The Court will therefore deny the motion for preliminary injunction.