26 F.3d 728
 92 Ed. Law Rep. 36
 Chelsie BAXTER, by her parents, Wilma Baxter and James
Baxter, Plaintiffs-Appellants,
v.
VIGO COUNTY SCHOOL CORPORATION, Ray Azar, in his individual
and official capacities, Vigo County Welfare
Department, et al., Defendants-Appellees.
 No. 93-2540.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 20, 1994.
Decided June 14, 1994.
 
 Kenneth M. Stanley, Terre Haute, IN, Yvonne Ferguson-Watkins (argued), Ferguson-Watkins & Harrold, Indianapolis, IN, for plaintiffs-appellants.
 Nellie L. Simbol (argued), Terre Haute, IN, for Vigo County Welfare Dept.
 Rebecca S. Bowman, Office of the Atty. Gen., Agency Litigation, Indianapolis, IN, for Indiana Dept. of Public Welfare, Pamela Connelly.
 Nana Quay-Smith, Karl L. Mulvaney (argued), Jane Ann Himsel, Mary H. Watts, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, Frederick T. Bauer, Terre Haute, IN, for Vigo County School Corp.
 Before CUDAHY and RIPPLE, Circuit Judges, and WILLIAMS, District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 Wilma and James Baxter, on behalf of their child, Chelsie, appeal the dismissal of their civil rights action brought under 42 U.S.C. Sec. 1983. Although our analysis is different in several respects from that of the district court, we conclude that its judgment ought to be affirmed.
 
 
 2
 * BACKGROUND
 
 
 3
 Because the Baxters appeal from the dismissal of their complaint for failure to state a claim, we must accept as true all well-pleaded factual allegations and the inferences reasonably drawn from them. Yeksigian v. Nappi, 900 F.2d 101, 102 (7th Cir.1990). We are not compelled to accept, however, conclusory allegations concerning the legal effect of facts set out in the complaint. See Nelson v. Monroe Medical Ctr., 925 F.2d 1555, 1559 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 1357, at 311 (1990).
 
 
 4
 In essence, the Baxters claim that they attempted to complain about grades, racism, and other unspecified policies at Lost Creek Elementary School. Their daughter wore T-shirts that read "Unfair Grades," "Racism," and "I Hate Lost Creek." The complaint continues by alleging that Ray Azar, principal of the school, prevented their daughter Chelsie from wearing the shirts and subjected her to unspecified punitive actions that prevented her from speaking out on matters of public concern. The complaint also alleges that Azar and an additional defendant, the Vigo County School Corporation ("VCSC"), thereby violated Chelsie's rights to freedom of speech, due process, and equal protection. The complaint further alleges, in conclusory fashion, that the defendants had violated the rights of the parents by subjecting them to "punitive and coercive measures" which resulted in restraining orders and false prosecutions. The complaint also names the Vigo County Department of Public Welfare ("VCDPW") and social worker Pamela Connelly. It alleges that they conspired with the VCSC and Azar to prosecute frivolous educational neglect and abuse charges against the Baxters. Finally, although it did not level any specific allegations against this party, the complaint named the Indiana Department of Public Welfare ("IDPW") as a defendant. Because the complaint is brief and because this appeal involves a challenge to its sufficiency, we set out verbatim the relevant portions below.[1] We shall state the disposition of the district court with respect to each defendant in the following discussion.
 
 II
 DISCUSSION
 
 5
 The Baxters take issue with the district court's dismissals on four fronts. First, they submit that the district court erred in dismissing the IDPW and the VCDPW on the ground that these governmental entities were entitled to immunity under the Eleventh Amendment. Second, they dispute the dismissal of Pamela Connelly in both her individual and official capacities. Third, the Baxters argue that the district court erred by dismissing their complaint with respect to the VCSC and Ray Azar in his official capacity based on the alleged insufficiency of the complaint. Finally, the Baxters challenge the dismissal of Azar in his individual capacity based on qualified immunity.
 
 A. The Eleventh Amendment
 
 6
 The district court dismissed the IDPW and the VCDPW on the ground that they were entitled to immunity under the Eleventh Amendment. We shall address each of these dismissals separately.
 
 1. Indiana Department of Public Welfare
 
 7
 In an order dated March 4, 1993, the district court dismissed the IDPW both on Eleventh Amendment grounds and on the basis that the IDPW is not a "person" within the meaning of Sec. 1983. On appeal, the Baxters acknowledge the general rule that the Eleventh Amendment bars Sec. 1983 actions against a state or a state agency. Nevertheless, they rely on Department of Education, State of Hawaii v. Katherine D., 727 F.2d 809 (9th Cir.1983), cert. denied, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985), to argue that there is an exception to this general rule when the state agency participates in a federally funded program, or when it engages in activity regulated by Congress. The Baxters' reliance on Katherine D. is misplaced. In Katherine D., the defendant state agency had received federal funds under a federal statute that, in the view of that court, conditioned the state's receipt of those funds upon "the state's amenability to suit in federal court." Id. at 819. Whatever the correctness of that decision with respect to the particular statutory scheme at issue,[2] the Baxters cite no similar statutory waiver of sovereign immunity on the part of the IDPW. There is no basis on which the Baxters can avoid the bar of the Eleventh Amendment.[3]
 
 2. Vigo County Department of Public Welfare
 
 8
 The district court granted the VCDPW's motion for dismissal on the ground that the VCDPW is a state agency under Indiana law and hence entitled to immunity under the Eleventh Amendment. As the only explanation for its decision, the court cited Indiana Code Sec. 12-1-2-1 and McCrum v. Elkhart County Dep't of Public Welfare, 806 F.Supp. 203, 209 (N.D.Ind.1992). Indiana Code Sec. 12-1-2-1, now codified in substance at Indiana Code Sec. 12-13-1-1 (1993), merely provided for the creation of the state department of public welfare. That provision did not establish that the county departments of public welfare were state agencies. Because the court in McCrum relied exclusively on former Indiana Code Sec. 12-1-2-1, that case offers no additional support for the district court's decision.
 
 
 9
 Relying on Mackey v. Stanton, 586 F.2d 1126 (7th Cir.1978), cert. denied, 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979), the Baxters maintain that the VCDPW is not a state agency entitled to Eleventh Amendment immunity. In Mackey, this court held that the Elkhart County Department of Public Welfare was not entitled to immunity under the Eleventh Amendment. At the outset of the analysis in Mackey, Judge Tone, writing for the court, recognized that, according to Mt. Healthy City School District v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the resolution of the immunity issue depends, in part, on the nature of the entity created by state law. Interpreting further the Mt. Healthy decision, Judge Tone concluded that the most significant factor is whether the entity in question has the power to raise its own funds by tax levy and by bond issuance. Mackey, 586 F.2d at 1131. In later cases, this court has followed the approach set out in Mackey. For instance, in Heiar v. Crawford County, Wisconsin, 746 F.2d 1190, 1194 (7th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), Judge Posner, writing for the court, noted that an argument that Wisconsin counties are protected by Eleventh Amendment immunity "had no possible merit," id., because like the Indiana counties at issue in Mackey, Wisconsin counties did not have sufficient economic interdependence with the state government to characterize them as an arm of the state. See also Kashani v. Purdue Univ., 813 F.2d 843, 846 (7th Cir.) (placing heavy reliance on Purdue University's financial dependence on the state in determining that Purdue is like an arm of the state and hence entitled to immunity under the Eleventh Amendment), cert. denied, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987).
 
 
 10
 Following here the analysis established in the earlier cases, we examine the relevant Indiana statutes. This examination convinces us that the recodification of the Indiana statutes and the intermittent substantive changes did not alter the relationship of the county entity and the state department in such a way as to change the status of the county department for purposes of Eleventh Amendment immunity. Indiana Code Sec. 12-19-3-2 (1993) provides for the establishment of a county welfare fund in each county. Each fund is raised by a tax levy on all taxable property in the county. If there are insufficient funds to cover a county's obligations, the county is authorized to obtain money by issuing bonds, Ind.Code Sec. 12-19-3-12 through Sec. 12-19-3-16 (1993), or by borrowing from a financial institution, Ind.Code Sec. 12-19-5-1 through Sec. 12-19-5-12 (1993). In addition, a county has the power to satisfy a judgment against it by means other than resort to the state treasury. Ind.Code Sec. 12-19-3-28 (1993). Thus, the current statutory framework is similar to that in Mackey. See Ind.Code Sec. 12-1-11-1 (1976) (establishing county welfare funds to be raised by levying taxes on all taxable property in county); Ind.Code Sec. 12-1-11-5 through Sec. 12-1-11-13 (1976) (authorizing county welfare department to issue bonds for various purposes, including the paying of judgments against the county). The court in Mackey found these local financial powers to be of prime importance, even though the state exercised some supervision over the county departments. Mackey, 586 F.2d at 1130-31. Because the relevant aspects of Indiana law have not changed in their essentials, we must adhere to our conclusion in Mackey: The county welfare department is not entitled to immunity under the Eleventh Amendment. We shall therefore defer discussion of the claims against the county until our discussion of the merits of the complaint.
 
 B. Immunity of Pamela Connelly
 
 11
 The district court also dismissed the claim against Connelly in her individual capacity. It concluded that she was entitled to absolute immunity. The court reasoned that, under Millspaugh v. County Department of Public Welfare, 937 F.2d 1172 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991), a county social worker is absolutely immune for her role in prosecuting a case. The court noted that the Baxters' complaint referred to Connelly only in connection with her allegedly conspiring with others to prosecute frivolous charges against the Baxters. Applying Millspaugh, the court concluded that Connelly in her individual capacity was entitled to absolute immunity for her role in prosecuting or conspiring to prosecute the Baxters.
 
 
 12
 The Baxters maintain that Millspaugh applies only to a social worker's in-court behavior. Without discussing Connelly's behavior or characterizing it as in-court or out-of-court, they conclude in conclusory fashion that the district court's reliance on Millspaugh was "clearly misplaced." We believe the Baxters must be deemed to have abandoned any argument with respect to the dismissal of Connelly in her individual capacity. Conclusory assertions cannot take the place of analysis. It is not our task to construct the parties' arguments for them. See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991) (stating that we "repeatedly have made clear that perfunctory and undeveloped arguments ... are waived"). Because the Baxters offer no serious argument against the district court's decision, we conclude that they have waived any challenge to the court's decision.
 
 C. The Sufficiency of the Complaint
 
 13
 We now turn to an assessment of the sufficiency of the complaint with respect to all parties except the Indiana Department of Public Welfare which, as we have noted previously, enjoys immunity from suit by virtue of the Eleventh Amendment.[4]
 
 
 14
 The basic principles governing the sufficiency of a complaint are well settled. The district court's dismissal pursuant to Rule 12(b)(6) is subject to our de novo review. Caldwell v. City of Elmwood, 959 F.2d 670, 671 (7th Cir.1992). In our review, we must accept as true all the well-pleaded allegations of the complaint and the inferences that may be drawn reasonably from those allegations. United States v. Gaubert, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); Yeksigian v. Nappi, 900 F.2d 101, 102 (7th Cir.1992). As the Supreme Court recently has made very clear, there is no heightened pleading requirement for civil rights actions. Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit, --- U.S. ----, ----, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). Rather, as in all civil litigation, the plaintiff is charged with the responsibility of setting forth, as mandated by Rule 8(a) of the Federal Rules of Civil Procedure, "a short and plain statement of the claim showing that the pleader is entitled to relief." Because the complaint before us was filed by the Baxters' attorney, it is not entitled to the more charitable review afforded the complaints of pro se litigants. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (stating that pro se complaints should be held to a less stringent standard than formal pleadings drafted by lawyers); Kincaid v. Vail, 969 F.2d 594, 598 (7th Cir.1992) (same), cert. denied, --- U.S. ----, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993). With these principles in mind, we now turn to the complaint filed by the Baxters' attorney to determine if the complaint complies with these straightforward requirements.
 
 
 15
 A local governmental unit[5] is subject to suit under 42 U.S.C. Sec. 1983 because it is deemed a "person" within the meaning of that provision. Monell v. Department of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). The Supreme Court has consistently interpreted this language as barring respondeat superior liability on the part of a local governmental unit. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989); Monell, 436 U.S. at 691, 98 S.Ct. at 2036; see also Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir.1992) ("Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents."). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983." Monell, 436 U.S. at 694, 98 S.Ct. at 2037. The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation, see, e.g., Monell, 436 U.S. at 690, 98 S.Ct. at 2035; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,' " City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970)); see also id. at 138 (Brennan, J., concurring); or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority," Praprotnik, 485 U.S. at 123, 108 S.Ct. at 923; id. at 139, 108 S.Ct. at 932 (Brennan, J., concurring); Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion).
 
 
 16
 The Baxters sued both the VCSC and principal Ray Azar in his official capacity. In a motion to dismiss, the VCSC and Azar submitted to the district court that the complaint as it pertained to them was insufficient for two reasons: (1) it failed to identify any unconstitutional policy or custom on the part of the VCSC; and (2) it failed to state any facts that would support the existence of a policy or custom on which to base their claim. Without addressing definitively the first reason, the district court agreed with the second. It noted that in none of the paragraphs of the complaint did the Baxters allege any facts that would support the existence of a policy, which is a prerequisite to suing a municipality under Sec. 1983. The court dismissed VCSC and Azar in his official capacity on this basis.
 
 
 17
 On appeal, the Baxters insist that, in two respects, they did set forth a valid claim of discriminatory custom and policy at the time of the alleged violation. First, they argue that Ray Azar in his official capacity as principal of the Lost Creek Elementary School had sufficient policy-making authority that his decisions with respect to Chelsie represented official policy of the VCSC. Azar responds that the Baxters' complaint fails to identify him as a policymaker, and thus he cannot be held liable in his official capacity. Second, the Baxters maintain they pleaded, apart from the actions of Azar, that the VCSC itself had policies or customs of unfair grading, racial bias, and false prosecution. The VCSC argues that the complaint fails to allege properly either (1) a school policy or custom of racial bias or false imprisonment, or (2) sufficient facts supporting either policy.
 
 
 18
 We first address the Baxters' claim that the complaint names Ray Azar as a final policymaker. Assuming that paragraph two of the complaint alleges that Chelsie was subjected by Azar to unfair grades and racism, and taking as true the allegation in paragraph four that Chelsie was deprived of free speech rights, the complaint still lacks an allegation that Mr. Azar was in a position to make final policy, or any policy for that matter. The Baxters' attorney asserted at oral argument that even a single instance of unconstitutional conduct can establish a policy. It is true that a single act or decision of a final policymaker can establish municipal policy. Pembaur, 475 U.S. at 481, 106 S.Ct. at 1299. A necessary corollary of this point, however, is that it must first be alleged adequately that a defendant is a final policymaker. Only then can a court proceed to the question of whether the single act or decision of that defendant constituted municipal policy. The Baxters' complaint is simply devoid of any such allegation. Indeed, the complaint can be read as alleging that he was carrying out VCSC's policies. R.2, p 5. Accordingly, we must conclude that the Baxters' complaint does not allege Azar to be a final policymaker of the VCSC.
 
 
 19
 We next turn to the Baxters' claim that they pleaded policies or customs on the part of the VCSC. Paragraph two of the complaint merely states:
 
 
 20
 Between February, 1988 and May, 1991, plaintiff Chelsie Baxter, a student at Lost Creek Elementary School, and her parents, attempted to complain and object to grades and racial bias and certain school policies at said school.
 
 
 21
 This paragraph is deficient because it fails to include a factual basis to describe with any particularity the gravamen of the plaintiff's complaint. While detailed factual pleading is certainly not required under Rule 8, a plaintiff's assertions must be made with sufficient particularity to orient the defendant to the basic nature of the plaintiff's alleged injury. " 'Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient.' " Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir.1994) (quoting Rodgers v. Lincoln Towing Serv., 771 F.2d 194, 202 (7th Cir.1985)). The Baxters' complaint fails even to describe "grades" or "racial bias" as school policies. On the contrary, it appears to distinguish "grades" and "racial bias" from "certain school policies." "The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of Section 1983 liability devoid of any well-pleaded facts." Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir.1985).
 
 
 22
 The rest of the complaint does nothing to overcome these shortcomings. Paragraph five states in substance that Azar carried out the policies of the VCSC, but it fails to identify those policies. Rather, the paragraph proceeds to assert that the carrying out of these unidentified policies deprived Chelsie of various constitutional rights. Paragraph six alleges that the defendants violated the Baxters' rights by engaging in "false prosecution," yet there is no allegation that the VCSC had a policy or custom in this regard. Similarly, in paragraph seven, it is alleged that the defendants conspired together to engage in false prosecution against the Baxters. Nowhere in the complaint is it alleged, with any particularity, how these actions can be said to have been taken pursuant to a policy. Indeed, even reading the paragraphs in conjunction with each other, we can discern no sufficiently specific allegation of a policy or custom. The Supreme Court has told us that it is of paramount importance that municipal liability be premised solely on the policy of the municipal entity and not on the theory of respondeat superior. Monell, 436 U.S. at 691, 98 S.Ct. at 2036. This complaint affords no opportunity to make that crucial assessment. Cf. Surplus Store & Exch. v. City of Delphi, 928 F.2d 788, 791-92 (1991) (stating that "the language and standards from Monell are not to become a dead letter"). Although at this stage of the litigation we must draw all reasonable inferences in favor of the Baxters, the inferences they ask us to draw are too attenuated to be reasonable. The district court did not err in dismissing the Baxters' complaint against the VCSC and Azar in his official capacity.
 
 
 23
 Similarly, we affirm the district court's decision to grant the VCDPW's motion to dismiss. For the VCDPW to remain as a defendant, the Baxters would have to allege some sort of policy or custom, for which the VCDPW is responsible, that caused a violation of the Baxters' or Chelsie's constitutional rights. However, the only allegation against the VCDPW is that it conspired with Pamela Connelly, the VCSC, and Ray Azar "to prosecute frivolous educational neglect, abuse and other charges." The complaint does not sufficiently allege any policy or custom on the part of the VCDPW. Nor does the complaint's cursory conspiracy allegation implicitly make out an allegation of a policy or custom on the part of the VCDPW. Consequently, the VCDPW's motion for dismissal was appropriately granted.[6]
 
 D. Qualified Immunity
 
 24
 Azar moved for dismissal of the complaint's allegations against him in his individual capacity on the ground of qualified immunity. In response, the Baxters tried to establish that Chelsie had a clearly established right to wear expressive T-shirts at school. For this proposition, the Baxters relied on Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The district court distinguished Tinker on the ground that it involved a high school student, whereas Chelsie was an elementary school student. Consequently, the district court determined that Azar was entitled to qualified immunity for the alleged violation of Chelsie's right to free speech.
 
 
 25
 Although Sec. 1983 is silent on the subject of immunities, Congress did not, by enacting this legislation, intend to override well-established immunities and defenses under the common law. Will v. Michigan Dep't of State Police, 491 U.S. 58, 67, 109 S.Ct. 2304, 2310, 105 L.Ed.2d 45 (1989). By now, it is well established that certain government officials enjoy a qualified immunity from suit. Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Cases following Harlow have spelled out in greater detail the nature of the qualified immunity doctrine:
 
 
 26
 In determining whether the right alleged to have been violated was "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted or failed to act. This requires the plaintiff to offer either a closely analogous case or evidence that the defendants' conduct is patently violative of the constitutional right that reasonable officials would know without guidance from the courts. To determine the applicability of qualified immunity, the defendants' actions must be compared to what a reasonable official would believe was required in light of the clearly established legal rules....
 
 
 27
 Casteel v. Pieschek, 3 F.3d 1050, 1053 (7th Cir.1993) (citations and quotation marks omitted); see also Lawshe v. Simpson, 16 F.3d 1475, 1483 (7th Cir.1994).
 
 
 28
 The Baxters bear the burden of showing that Chelsie enjoyed a clearly established right to wear her expressive T-shirts while in school. As we stated, they rely mainly on Tinker. The plaintiffs in Tinker were two high school students and one junior high student, aged 13, all of whom wore black armbands to school to protest the Vietnam War. The students' wearing of black armbands violated school policy, and the students were suspended. The students sued the school district, claiming that their rights under the First Amendment had been violated. In analyzing this claim, the Court began with the proposition that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker, 393 U.S. at 506, 89 S.Ct. at 736. Yet the Court also recognized the need for school officials to be able to maintain order in the schools. Id. at 507, 89 S.Ct. at 736. The Court believed that these competing concerns could be accommodated by allowing schools to prohibit expression that would " 'materially and substantially interfere with the requirement of appropriate discipline in the operation of the school.' " Id. at 509, 89 S.Ct. at 738 (quoting Burnside v. Byars, 363 F.2d 744, 749 (5th Cir.1966)). Because the record in Tinker failed to show any such disruption, the Court held that the school could not prohibit the students from wearing them. Id. at 514, 89 S.Ct. at 740. Analogizing to Tinker, the Baxters argue that there is no evidence in the record that her T-shirts had any disruptive effect on school discipline; they assert that it was therefore unconstitutional for Azar to prohibit her from wearing them.
 
 
 29
 Azar does not argue at this stage of the litigation that the T-shirts caused any disruption; instead, he maintains that Tinker is not dispositive because it involved students older than Chelsie. The Baxters downplay the age difference, arguing that it is merely a "new factual wrinkle" that does not undermine her "clearly established" right to free speech. See People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 148 (3d Cir.1984) ("This is a far cry from situations involving a clearly established and well litigated general proposition in which the case at hand merely presents a new factual wrinkle."). Since Tinker, however, the Supreme Court has cast some doubt on the extent to which students retain free speech rights in the school setting. In Bethel School District No. 403 v. Fraser, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986), the Court rejected a First Amendment challenge by students older than Chelsie Baxter due, in part, to the students' age. In that case, the Court considered whether the First Amendment prohibits a school from disciplining a student for making a speech at a school assembly containing a sexual innuendo. In concluding that there was no First Amendment bar to disciplining the student speaker in that circumstance, the Court focused primarily on the sexual nature of the speech. However, the Court also considered the age of the speaker and those in the audience. The Court noted that "[i]t does not follow ... that simply because the use of an offensive form of expression may not be prohibited to adults making what the speaker considers a political point, the same latitude must be permitted to children in public school." Id. at 682, 106 S.Ct. at 3163; see also Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 272, 108 S.Ct. 562, 570, 98 L.Ed.2d 592 (1988) (stating that "a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics").
 
 
 30
 The parties were unable to find many lower federal court cases that have delved into the area of student speech. Those they have found do not discuss the applicability of the First Amendment to grammar school students. See Lansdale v. Tyler Junior College, 470 F.2d 659, 661 (5th Cir.1972) (involving junior college students), cert. denied, 411 U.S. 986, 93 S.Ct. 2268, 36 L.Ed.2d 964 (1973); Gano v. School Dist. 411, 674 F.Supp. 796, 797 (D.Idaho) (involving high school student); Dodd v. Rambis, 535 F.Supp. 23, 24 (S.D.Ind.1981) (involving high school students).[7]
 
 
 31
 In this case, Chelsie was in elementary school when her attempts at self-expression were blocked. She was at least several years younger than the youngest student in Tinker. This does not mean that elementary school students are entitled to no First Amendment protection. Cf. Hedges v. Wauconda Comm. Sch. Dist. No. 18, 9 F.3d 1295, 1298 (7th Cir.1993) (stating that "nothing in the first amendment postpones the right of religious speech until high school"). But given the indications in Fraser and Kuhlmeier that age is a relevant factor in assessing the extent of a student's free speech rights in school, in addition to the dearth of caselaw in the lower federal courts, we are unable to conclude that the Baxters have demonstrated that the right Azar is alleged to have violated was "clearly established." Thus, Azar in his individual capacity was entitled to qualified immunity with respect to Chelsie's First Amendment claim.[8]
 
 Conclusion
 
 32
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The Honorable Ann Claire Williams, of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The relevant paragraphs of the complaint state as follows:
 
 
 [2]
 Between February, 1988 and May, 1991, plaintiff Chelsie Baxter, a student at Lost Creek Elementary School, and her parents, attempted to complain and object to grades and racial bias and certain school policies at said school
 
 
 [3]
 Plaintiff Chelsie Baxter wore T-shirts that read, "UNFAIR GRADES", "RACISM", and "I HATE LOST CREEK"
 
 
 [4]
 Defendant Ray Azar, principal at Lost Creek, prohibited plaintiff from wearing said T-shirts at school, and subjected plaintiff Chelsie Baxter [to] disciplinary and punitive actions, and thereby prevented her from expressing her protest and opinion, concerning the above matters of public concern
 
 
 [5]
 Defendant principal intentionally and knowingly carried out and executed the policies of the Vigo County School Corporation, and said actions and the enforcement of said policies deprived defendant [sic] Chelsie Baxter of her rights and privileges under the Amendments to the U.S. Constitution, to wit: the right of freedom of speech under the First Amendment, and the right to due process under the Fifth and Fourteenth Amendment[s], and the right to equal protection of the laws, under the Fourteenth Amendment
 
 
 [6]
 Defendants further violated said above rights and privileges of parents Wilma and James Baxter, by punitive and coercive measures directed against them, which resulted in deprivations, including the enforcement of restraining orders and false prosecution, in order to violate their rights under these Amendments
 
 
 [7]
 The defendants Pamela Connelly and the Vigo County Welfare [sic] did conspire with defendants Ray Azar and the Vigo County Schools, to prosecute frivolous educational neglect, abuse and other charges against parents, which were later dismissed
 R.2. Claiming that these acts subjected the defendants to liability under 42 U.S.C. Sec. 1983, the complaint requested $1,500,000.00 in compensatory and punitive damages. Eventually, in three separate orders, the district court dismissed all defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).
 
 
 [2]
 The Ninth Circuit later noted that Katherine D. had no force in light of the Supreme Court's holding in Atascadero State Hospital v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (holding that actions seeking retroactive monetary relief under Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, are proscribed by the Eleventh Amendment). See Doe by Gonzales v. Maher, 793 F.2d 1470, 1493 (9th Cir.1986), aff'd as modified sub. nom. Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Although Atascadero has been superseded by statute, see 42 U.S.C. Sec. 2000d-7; Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 828 n. 7 (4th Cir.1994), we note that the Education for All Handicapped Children Act of 1975, 20 U.S.C. Sec. 1401 et seq., at issue in Katherine D. has since been amended to provide explicitly for the abrogation of Eleventh Amendment immunity. See 20 U.S.C. Sec. 1403
 
 
 [3]
 Alternatively, the Baxters argue that they can avoid the bar of the Eleventh Amendment because they are entitled to state a claim directly under the Fourteenth Amendment's Equal Protection Clause. As the IDPW points out, however, there is no need to imply a direct cause of action under the Fourteenth Amendment when Congress has provided a means to vindicate those rights in 42 U.S.C. Sec. 1983. Indeed, one circuit has expressly held that a plaintiff could not sue state officials directly under the Constitution in view of the fact that he had remedy under Sec. 1983. Ward v. Caulk, 650 F.2d 1144, 1148 (9th Cir.1981). The Baxters' citation to Holley v. Lavine, 605 F.2d 638 (2d Cir.1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), is of no assistance to them; that case expressly refused to consider a similar claim. Id. at 647-48
 
 
 [4]
 A judgment against an official of a local governmental entity sued in his official capacity would be satisfied by that entity. Therefore, a suit against such an official amounts to a suit against the entity of which he is an official. Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985)
 
 
 [5]
 By a Rule 28(j) letter, the VCSC suggested, just prior to oral argument, that it enjoys Eleventh Amendment immunity. It did not make this argument in the district court or in its brief in this court. Its assertion is based solely on a decision of the Court of Appeals of Indiana that, in the course of holding that a school corporation is not a person for purposes of section 1983, reasoned that such an entity enjoys Eleventh Amendment immunity. See Board of Trustees v. Landry, 622 N.E.2d 1019, 1022-25 (Ind.App.1993)
 While this court has noted that it may raise Eleventh Amendment issues sua sponte, Crosetto v. State Bar of Wisconsin, 12 F.3d 1396, 1403 n. 10 (7th Cir.1993), it is well established that we need not do so in the absence of a submission by a party to that effect. See Patsy v. Florida Bd. of Regents, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982); 13 Arthur R. Miller et al., Federal Practice and Procedure Sec. 3524, at 170-71 (1990). This is especially true when the underlying issue can be easily resolved on other grounds. Benning v. Board of Regents of Regency Univs., 928 F.2d 775, 777 n. 2 (7th Cir.1991).
 Certainly, the mere citation of Landry in a Rule 28(j) letter does not constitute a party's raising the matter. Moreover, as we note in the text, the allegations against the school board cannot survive a motion under Rule 12(b)(6). Even if we were to reach the merits of this Eleventh Amendment assertion, we would have to conclude that the VCSC has not begun to meet its burden of persuasion. Cf. ITSI TV Prods., Inc. v. Agricultural Assocs., 3 F.3d 1289, 1292 (9th Cir.1993) (stating that "the public entity ought to bear the burden of proving the facts that establish its immunity under the Eleventh Amendment"). As the school board admits in the Rule 28(j) letter, Landry takes a position "wholly divergent from past federal and state decisions." Indeed, Landry 's reliance on cases dealing with governmental bodies that clearly are instrumentalities of state government renders it particularly dubious authority.
 
 
 [6]
 We therefore also affirm the district court's dismissal of the complaint as it pertained to Pamela Connelly in her official capacity. See supra note 4
 
 
 [7]
 The Baxters also rely on Jeglin ex rel. Jeglin v. San Jancinto Unified School District, 827 F.Supp. 1459 (C.D.Cal.1993). Although we must consider relevant legal precedent not presented to the district court, see Elder v. Holloway, --- U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994), the Jeglin case is not relevant to our inquiry because it was decided after the allegedly unconstitutional actions. Thus, even if we were to consider Jeglin and to determine that it was completely in favor of the Baxters' position, it would not establish that Azar violated "clearly established" constitutional rights. Nor does the case's holding necessarily control the arguably disruptive situation presented in the case. This court's recent decision in Hedges v. Wauconda Community Unit School District No. 18, 9 F.3d 1295 (7th Cir.1993), is also unhelpful to the plaintiffs. It was decided after the events at issue here and involved the free expression rights of junior high school students
 
 
 [8]
 The Baxters also argued to the district court that Azar violated Chelsie's due process and equal protection rights. In a footnote, the court dismissed these arguments, stating that the complaint's reference to "disciplinary and punitive actions" clearly was referring to the free speech issue. We note that the due process claim is mentioned only briefly, and the complaint gives absolutely no indication what the disciplinary actions were. In fact, it does not even allege that the process by which Azar decided to discipline Chelsie was deficient. With regard to the false prosecution claim, we agree with Azar that the Baxters failed to raise it in the opposition to Azar's motion to dismiss. Generally, failure to raise a claim in the district court constitutes a waiver of the right to raise the issue on appeal. Dixon v. Chrans, 986 F.2d 201, 203 (7th Cir.1993). For these reasons, we decline to disturb the judgment of the district court on these issues