Christopher YOUNG, Plaintiff,

v.

Robert BREEDING, Cindy Casagrande, Captain Douglas, Marilyn Coutee, Charles Frederick, Keith Cooper, Ronald Carter, Sergio Molina, and Dr. Hien Dang, Defendants.

No. 95 C 4547.

United States District Court,
N.D. Illinois,
Eastern Division.

May 6, 1996.

Christopher Young, Joliet, IL, pro se.

Martha E. Gillis, Illinois Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for Robert Breeding, Cindy Casagrande, Arthur Douglas, Marilyn Coutee.

Thomas Lee Ciecko, Martha E. Gillis, Illinois Attorney General's Office, Chicago, IL,

Susan Takata O'Leary, Ill. Dept. of Corrections, Chicago, IL, for Warden Melina.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Christopher Young brings this civil complaint against nine employees of the Joliet Correctional Center, alleging that his constitutional rights were violated during his incarceration at the facility in June 1995. Presently before this court is a motion to dismiss the complaint with regard to the following six defendants: Robert Breeding, Ronald Carter, Cindy Casagrande, Keith Cooper, Dr. Hien Dang, and Sergio Molina.[1] For the reasons set forth below, the motion to dismiss is granted as to Defendant Molina, granted in part and denied in part as to Defendants Breeding and Carter, and denied as to Defendants Casagrande, Cooper, and Dang.

### I. Background

Young alleges in his complaint that on June 22, 1995, he was incarcerated in Joliet's segregation unit with an inmate named Eniss. The plaintiff contends that Defendant Breeding, while distributing food trays to him and his cellmate, verbally threatened Young.[2] Eniss asked Young what this altercation was all about, and as Young related the story of his prior encounters with Breeding, he began to suffer an asthma attack. Young alleges that Eniss started banging on the cell door and yelling for a medical technician to assist the plaintiff.

When defendants Breeding and Carter returned to the cell to pick up the food trays, Eniss tried to tell them of Young's asthma attack and, presumably in attempt to get their attention, threw hot coffee on Breeding. Breeding responded to this attack by spraying mace into the cell, further exacerbating

Young's asthmatic condition. Eniss then tore a pipe out of the cell wall, and proceeded to break open the cell door window and damage the cell walls. Approximately thirty minutes later Defendant Casagrande, a nurse at Joliet, arrived at the cell with Breeding. However, Young claims she refused to provide him with any medical assistance and left the area. Eniss once again began to destroy the cell with the pipe he had torn from the wall. At this point jail officials apparently had enough of Eniss's antics, and Defendants Molina, Douglas, and other unidentified officers pulled Young and Eniss from the cell. Young claims that Douglas cuffed his hands and legs, and then dragged him down a staircase toward the health care unit, all the while hitting him in the face and running him into walls and doors.

When he arrived at the prison hospital, Young maintains that he was placed in a "strip cell," where he was stripped of his clothes and forced to endure the extremely cold air from the hospital's air conditioning system. Young claims he had no clothing, blankets, mats, sheets, or pillows during his first night in the strip cell. Indeed, he alleges that in an effort to stay warm, he wrapped himself in toilet paper.

The following day Dr. Dang met with Young and ordered him a blanket and a mat. Dang also informed Young that Warden Cooper no longer wanted him at Joliet, and that he would be transferred to Menard Psychiatric Center. Young allegedly wrote numerous letters to Cooper requesting to meet with him and explain the events that had transpired, but he claims that Cooper never responded. Young further claims that he repeatedly sought release from the strip cell, but he was detained in this cell until his transfer to Menard.[3] Young maintains that each time he demanded to be released from the strip cell or see Warden Cooper, he was given a shot of medication per orders from

---

1. Defendants Douglas, Frederick, and Coutee answered the plaintiff's complaint on January 16, 1996. However, they do not join in the instant motion to dismiss.

2. Breeding allegedly said: "Hey Young I remember you from 1987 and I don't like you and if you cause any trouble I will do you worse than last time I got in your ass." Compl. at 5.

3. It is unclear the exact number of days Young remained in the strip cell. His complaint initially states that he was subjected to inadequate conditions in the strip cell for nine days, yet it later states that he had been in the cell for nineteen days. Finally, in Young's response to defendants' motion to dismiss he claims that he remained in the cell for twenty-one days.

Dang and another unnamed doctor. Although Young does not state exactly what kind of medication he received, it appears from the complaint that he believes some form of antipsychotic drug was administered in order to calm him down.

Young filed the instant complaint on August 7, 1995, alleging that Breeding, Carter, and Casagrande refused to provide him with medical care in response to his asthma attack, thereby violating his rights under the Eighth Amendment. He also claimed that Breeding, Molina, and Douglas inflicted unnecessary harm on him by macing his cell and injuring him on the way to the hospital, and that Cooper and Dang improperly transported him to a mental institution. Finally, he claims that Dang illegally administered drugs to him in order to keep him sedated.[4] Six of the defendants now move to dismiss the claims against them.

## II. Motion to Dismiss Standard

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.,* 52 F.3d 623, 627 (7th Cir. 1995). At this stage in the litigation we take as true all factual allegations made in the complaint, and construe all reasonable inferences therefrom in the plaintiff's favor. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995). Moreover, as compared with pleadings drafted by attorneys, complaints written by pro se litigants are examined under a less arduous standard. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Kincaid v. Vail,* 969 F.2d 594, 598 (7th Cir.1992), *cert. denied,* 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993). However, unsupported conclusions of fact and conclusions of law will not defeat an otherwise meritorious motion to dismiss. *See Cushing v. City of Chicago,* 3

F.3d 1156, 1160–61 n. 5 (7th Cir.1993); *Watters v. Harris,* 656 F.2d 234, 240 (7th Cir. 1980).

## III. Discussion

### A. Excessive Force and Claims of Verbal Threats

■ Young alleges that Breeding verbally threatened him while distributing food trays to his segregation cell. Such threats, if made, were clearly unprofessional and inexcusable. However, allegations of verbal abuse and threats by correctional officers are insufficient grounds for relief under § 1983. *See Daniels v. Southfort,* 6 F.3d 482, 484 (7th Cir.1993); *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987). Accordingly, this claim against Breeding is dismissed.

■ Young next claims that Breeding used excessive force in macing the his cell after Eniss threw hot coffee on him. Breeding moves to dismiss Young's claim of excessive force, arguing that the mace was used to restore discipline and there is no allegation that he acted in bad faith or with the intention of inflicting harm.

■ The wanton and unnecessary infliction of pain upon prisoners is forbidden by the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). In *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), the Supreme Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." In this case the allegedly excessive force was Breeding's use of mace, which in this Circuit does not constitute a per

---

**4.** In addition to the above mentioned claims, Young also asserts that adjustment committee members Coutee and Frederick found him guilty on a disciplinary charge of throwing coffee on Breeding and damaging the segregation unit cell, even though they neglected to give him a hearing. However, because Coutee and Frederick have not moved to dismiss these claims, we do not delve into the specifics of these allegations.

se violation of the Eighth Amendment. *Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir.1984) (concluding that mace may be used to subdue recalcitrant prisoners even if inmate is locked in prison cell), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985). According to the plaintiff's complaint, Breeding sprayed mace into Young's cell in direct response to having coffee thrown on him. Young does not allege that great quantities of mace were used, or that Breeding's sole purpose was the wanton infliction of pain. Indeed, Young does not even allege that Breeding sprayed mace directly into his face or eyes, but through a slot in the cell door. Although Young claims that the mace exacerbated his asthma attack, he does not dispute that its use was intended to subdue Eniss, and not "for the very purpose of causing [him] harm." *Hudson,* 503 U.S. at 6, 112 S.Ct. at 998 (quoting *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085). Based upon Young's description of the circumstances, there is no indication that Breeding improperly sprayed mace in violation of the Eighth Amendment. Accordingly, because Breeding's use of mace was a reasonable response to a legitimate security concern, we grant the motion to dismiss this claim against him.

■ Young also brings an excessive force claim against Defendant Molina based on an allegation that Molina, along with Douglas and other unidentified officers, pulled Young and Eniss out of their cell. He claims that Douglas then placed him in restraints and dragged him to the prison hospital, hitting him and banging him into objects along the way. However, other than to say that Molina removed him from his cell, Young provides no further allegations to support his claim of excessive force against this defendant. While fact pleading is not required, a plaintiff must provide some factual basis for his claim in order to permit the court to evaluate its merits. *Cf. Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 736 (7th Cir.1994) (dismissing claim of municipal liability where plaintiff failed to adequately allege contours of challenged policy). Moreover, even assuming Molina used excessive force in pulling Young from his cell, there is no allegation that he acted maliciously or sadistically to cause the plaintiff harm.

*Hudson.,* 503 U.S. at 6–8, 112 S.Ct. at 999. Since Young does not allege that Molina's actions were excessive in extracting him from the cell, or that such conduct was malicious or sadistic, Molina's motion to dismiss must be granted.

### B. Denial of Medical Care Claims

■ Young maintains that Defendant Casagrande refused to give him necessary medical care after Eniss alerted guards of his asthma attack. Although Casagrande went to Young's cell accompanied by Breeding, and observed Young disabled from the asthma attack and the mace, she allegedly left the cell area after refusing to provide Young with medication or medical assistance. In Casagrande's motion to dismiss, she argues that "it is reasonable to conclude Casagrande was unwilling or unable to venture into the cell while Eniss was taking a 'pipe from the wall and started to bang on the door and wall knocking bricks out of the wall.' That is not deliberate indifference, but common sense." Defs.' Mem. at 4 (quoting from Young's complaint) (ellipses omitted). Although Casagrande contends that she acted reasonably, based on the allegations in the complaint it is also quite possible—depending on the degree of danger presented to Casagrande and the severity of Young's asthma attack—that she demonstrated deliberate indifference to Young's serious medical needs. While this claim may be resolved on a motion for summary judgment, at this point in the proceedings we cannot say that Young's claim against Casagrande must fail as a matter of law.

■ Young also brings a claim of deliberate indifference against Breeding and Carter based on their refusal to provide him with medical attention during his asthma attack. According to the complaint, and the reasonable inferences that can be drawn from it, Eniss complained to Breeding and Carter about Young's medical condition just before throwing coffee on the defendant and getting the cell sprayed with mace. Although the two officers later returned with nurse Casagrande, Young alleges that this took thirty minutes, during which time his asthma was

aggravated by the mace. As with the claim against Casagrande, based on these allegations we cannot say that Young has failed to state a claim against Breeding and Carter. He alleges that they were aware of a serious medical condition, and that they choose to delay obtaining medical assistance for one-half hour, even though his asthma attack was getting worse. As with the claim against Casagrande, at summary judgment it may become apparent that the defendants did not act with deliberate indifference. Nonetheless, we cannot dismiss the claims against Breeding and Carter at this stage in the proceedings.

## C. Transfer to Menard Psychiatric Center

■ Young alleges that he repeatedly attempted to see Warden Cooper after Dang notified him that he would be transferred to Menard Psychiatric Center. Dang allegedly informed Young that Cooper no longer wanted him at Joliet. Young requested to see Cooper so that he could explain the events that had transpired and, presumably, avoid a transfer. Cooper allegedly never responded to Young's letters.

■ Defendant Cooper contends in his motion to dismiss that a housing transfer is well within the terms of confinement ordinarily contemplated by a prison sentence. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976). It is true that inmates have no constitutionally protected liberty interest in remaining at a particular institution; they may be transferred for any constitutionally permissible reason or for no reason at all. *Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538–39; *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982). However, Young does not allege that he received an intraprison transfer, but instead, that he was transferred to Menard Psychiatric Center pursuant to Cooper's orders. In *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Supreme Court addressed the issue of whether a prisoner has a right to refuse transfer to a state mental health hospital, and to have procedural protections of that right. The Court concluded that the involuntary transfer of a prisoner to a mental health hospital impli-cates a liberty interest protected by the Fourteenth Amendment's Due Process Clause. *Id.* at 491–94, 100 S.Ct. at 1262–64. The Court further held that inmates were entitled to notice of the intention to transfer them to a mental hospital, a hearing on the issue before an independent decisionmaker, and, in certain circumstances, the opportunity to present and cross-examine witnesses. *Id.* at 494–96, 100 S.Ct. at 1264–66; *see also Sandin v. Conner,* —— U.S. ——, —— – —— n. 4, 115 S.Ct. 2293, 2297–98 n. 4, 2300, 132 L.Ed.2d 418 (1995) (reaffirming *Vitek* ).

Here, Young alleges that he was transferred to Menard Psychiatric Center pursuant to Warden Cooper's orders. While he claims that Dr. Dang informed him of his imminent transfer, he does not allege that he received a hearing on the matter before a neutral decisionmaker. Accordingly, as it appears from the complaint that Young did not enjoy certain procedures that he was entitled to receive prior to his transfer, we deny Cooper's motion to dismiss.

## D. Conditions of Confinement in Strip Cell

■ Young next complains that his confinement in the hospital unit's "strip cell" for approximately twenty days constituted cruel and unusual punishment. Young alleges that when he was first placed into the cell he was stripped naked and forced to endure the cold temperature of the cell caused by the hospital's air conditioning system. He claims that he was not provided with clothing during that entire evening, and had to wrap himself in toilet paper in order to stay warm. Young also alleges that the cell did not have any blankets, sheets, mats, or pillows, although on his second day in the cell Dang provided him with a blanket and mat. Despite his requests to be released from the strip cell or to see Cooper, Young claims that his pleas were ignored and no corrective measures were taken.

It is well established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). The Supreme Court in *Farmer v. Brennan,* 511

U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), held that prison officials violate the Eighth Amendment in conditions of confinement cases where (1) the alleged deprivation is, under an objective standard, "sufficiently serious" and (2) the officials act with "deliberate indifference." *Id.* at ——, 114 S.Ct. at 1977. In defining deliberate indifference, the Court held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ——, 114 S.Ct. at 1979.

Assuming the veracity of Young's allegations, on the record before us it appears that the conditions the plaintiff allegedly endured in the strip cell for approximately twenty days were sufficiently serious to implicate the Eighth Amendment. *See Johnson v. Pelker,* 891 F.2d 136, 139–40 (7th Cir.1989) (leaving a prisoner in a cell for three days without running water, dry clothing, bedding, or cleaning supplies, and in which feces were smeared on the walls, may fall below the threshold of decency set by Eighth Amendment). After discovery it may be apparent that the actual conditions of the hospital unit's detention cell were adequate under the Eighth Amendment, at which time the defendants could move for summary judgment. Nonetheless, based on the plaintiff's allegations we must conclude that the conditions in the strip cell were sufficiently serious to implicate the plaintiff's constitutional rights.

In addition, Young's allegations adequately outline the requisite subjective intent for defendants Dang and Cooper. As for Dang, Young claims that the defendant visited him in his cell and treated him during his stay. Thus, at least after their first meeting, Dang must have known of the conditions in Young's cell. Young also claims that he wrote letters to Cooper "trying to explain all that had happen[ed]," but Cooper never responded. Compl. at 7. The reasonable inference from this allegation is that Young communicated to Cooper about the conditions

of his confinement in the hospital unit. Therefore, we cannot conclude that the allegations in the complaint are insufficient to establish that the defendants acted with deliberate indifference to Young's serious needs. Accordingly, the motion to dismiss these claims against Cooper and Dang is denied.

*F. Forced Administration of Medication*

Young alleges that Dang forcibly medicated him against his will each time he requested to be released from the strip cell. We are guided in our review of this claim by *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), in which a prisoner alleged that his due process rights were violated when he was given antipsychotic drugs against his will. The Court held that although an inmate has an interest protected under the Fourteenth Amendment's Due Process Clause in avoiding the involuntary administration of antipsychotic drugs, *id.* at 221–22, 110 S.Ct. at 1036–37, such medication could still be administered to a prisoner against his will "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *id.* at 227, 110 S.Ct. at 1039–40. Prior to receiving such medication, however, the inmate must be afforded certain procedural protections: notice, the right to be present for an adversary hearing before a neutral adjudicator, and, in most instances, the right to present and cross-examine witnesses. *Id.* at 235, 110 S.Ct. at 1043–44; *Sullivan v. Flannigan,* 8 F.3d 591, 596–99 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1376, 128 L.Ed.2d 52 (1994).

Here, it is unclear whether the medication Young received—which we assume to be some sort of antipsychotic drug—was in his medical interest and essential for his safety or the safety of others. Moreover, there is no indication in the complaint that Young received a prior hearing of any kind. Because we cannot conclude that Young's rights under the Due Process Clause were adequately protected, we must deny Dang's motion to dismiss this claim.

## IV. Conclusion

For the reasons set forth above, the defendants' motion to dismiss is granted in part and denied in part. It is so ordered.