Andrew TROUT, Appellant–Plaintiff,

v.

Jason BUIE and Nicholas Gulling,
as Sheriff of Hancock County,
Appellees–Defendants.

No. 30A01–9411–CV–361.

Court of Appeals of Indiana.

July 18, 1995.

William F. Thompson, Indianapolis, for appellant.

Ronald J. Semler, Stephenson, Daly, Morow & Kurnik, Indianapolis, for appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Andrew Trout asserts that the trial court erred in granting summary judgment in favor of appellee-defendant Sheriff Nicholas Gulling[1] on his two claims that the Sheriff violated his constitutional rights pursuant to 42 U.S.C. § 1983 and on his two claims that the Sheriff was negligent.

## FACTS

After being convicted for driving under the influence, Trout was sentenced to serve time at the Hancock County Jail. On April 16, 1990, Trout was booked into the Hancock County Jail and assigned to an open cellblock which housed several other inmates, including Jason Buie. Buie, who had recently been transferred from the Randolph County Jail,

was an eighteen-year old male facing charges of murder, arson and conspiracy to commit murder. On the evening of April 27, 1990, an inmate in the cellblock told Trout that he could have his breakfast tray the following morning. However, the next day when the breakfast trays were passed out, Buie took the other inmate's tray. Trout, upset that Buie had taken the tray that had been promised to him, took the toast from one of Buie's trays. Buie became irritated and threatened Trout that he had better give the toast back. Rather than returning the toast, Trout stomped his foot and told Buie to get away from him. Buie then grabbed Trout by the hair and hit him several times in the face. When the Sheriff's deputies pulled Buie away from Trout, Trout's nose was cut and bleeding. The deputies immediately transported Trout to the emergency room of the Hancock County Memorial Hospital where he was examined by a physician. The physician determined that Trout's nose was not broken, stitched the laceration on his nose and sent him back to the jail. Trout was placed in a different cellblock and was released the next day having completed his sentence. Following his release from jail, Trout consulted a physician because he had continuing pain in his nose and difficulty breathing. The physician informed Trout that his nose was broken and performed surgery to repair it on May 8, 1990.

On January 7, 1991, Trout filed a complaint against Buie, Sheriff Gulling, in his official capacity, and the Board of County Commissioners of Hancock County.[2] Subsequently, Trout filed a five-count amended complaint on May 15, 1992. Count I of the amended complaint was a claim against Buie for battery. In Count II, Trout alleged that the Sheriff was negligent in carrying out his duty to Trout in that he failed to use reasonable care in segregating inmates and failed to provide appropriate medical treatment. Count III of the amended complaint contained an allegation that the Sheriff breached his duty to pay for medical treatment because he failed to pay for the surgery, performed after Trout's release from prison, to

---

1. Defendant Jason Buie is not a party in this appeal.

2. The trial court dismissed the Board of Commissioners from the action on March 22, 1991.

repair his broken nose. Finally, in Counts IV and V, Trout alleged deprivations of his Eighth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 in that the Sheriff was deliberately indifferent to his physical safety and medical needs.

On May 27, 1992, the Sheriff filed a motion to dismiss Counts IV and V, pursuant to Ind.Trial Rule 12(B)(6), alleging that Trout failed to state a claim under 42 U.S.C. § 1983 for which relief could be granted. In response, Trout filed a memorandum in opposition to the Sheriff's motion to dismiss. Along with the memorandum, Trout also filed affidavits, the Sheriff's answers to interrogatories, and other products of discovery for the court's consideration. Because Trout presented matters outside of his pleading, the trial court, pursuant to T.R. 12(B), treated the motion to dismiss as a motion for summary judgment. On September 21, 1992, the court granted partial summary judgment in favor of the Sheriff on Counts IV and V.

Thereafter, the court set the case for trial on May 2, 1994. However, on March 23, 1994, the Sheriff filed a motion for summary judgment as to Counts II and III claiming that Trout was contributorily negligent as a matter of law and that the Sheriff had fulfilled his duty to provide Trout with appropriate medical care. The court entered findings of fact and conclusions of law and granted summary judgment in favor of the Sheriff on Counts II and III. Trout brings this appeal claiming that the court erred in granting summary judgment on Counts II, III, IV and V.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is an appropriate disposition if the moving party designates specific evidence showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); Her-

mann v. Yater (1994), Ind.App., 631 N.E.2d 511, 513. If the moving party meets these two requirements, the burden shifts to the non-movant to designate specific facts showing that there is a genuine issue for trial. T.R. 56(C); Id.

Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Fawley v. Martin's Supermarkets, Inc. (1993), Ind. App., 618 N.E.2d 10, 12, trans. denied. We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment on Counts II and III. Special findings are not required in summary judgment proceedings and are not binding on appeal. Watters v. Dinn (1994), Ind.App., 633 N.E.2d 280, 285, trans. denied. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. Id.

### II. 42 U.S.C. § 1983

Trout claims that the trial court erred in granting partial summary judgment in favor of the Sheriff on Counts IV and V of his amended complaint in which he alleged deprivations of his constitutional rights under 42 U.S.C. § 1983.[3] Trout brought his § 1983 action against the Sheriff in his official capacity. An official capacity suit under § 1983 is merely an alternative means of pleading an action against the governmental entity, here Hancock County. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). It is well settled that governmental entities are answerable only for their own decisions and policies. Baxter by Baxter v. Vigo County School Corp. (7th Cir.1994), 26 F.3d 728, 734. They are not vicariously liable for the constitutional torts of their agents. Id. "[It] is when execution of a government's policy or custom, whether made by its lawmakers or by those whose

---

3. Specifically, in Count IV Trout alleged that the Sheriff acted with deliberate indifference and reckless disregard to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. In Count V, Trout claimed that the Sheriff acted with deliberate indifference and reckless indifference to his safety needs in that the Sheriff knew or should have known that Buie was dangerous yet failed to segregate him from the rest of the inmates, thus, violating his Fourteenth Amendment rights to due process.

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Again, because Trout sued the Sheriff solely in his official capacity, he was in effect suing the local government of Hancock County. Thus, in order for Trout to have succeeded in defeating the Sheriff's motion for summary judgment, Trout had to raise a material issue of fact regarding whether the Sheriff was acting pursuant to a governmental policy or custom. A local governmental entity may be held liable under § 1983 for violating the civil rights of a person because of its policy in three instances: 1) an express policy that, when enforced, causes a constitutional deprivation, 2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or 3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Baxter,* 26 F.3d at 735. Thus, we must determine whether Trout raised a genuine issue of material fact regarding whether Hancock County had a policy or custom for which it may be held liable under § 1983.

On appeal, Trout claims that he established, or at the very least raised a genuine issue of material fact, that the Sheriff was acting pursuant to a governmental policy or custom. In his memorandum in response to the Sheriff's motion to dismiss, Trout alleged that the Sheriff was acting pursuant to the following governmental policies and customs which caused a violation of his constitutional rights:

"a policy of inadequate supervision; a policy which authorized or permitted unlimited discretion in deciding when to segregate inmates; a policy permitting those with violent propensities to mingle with the general population; a policy of ignoring a specific danger which would be apparent to a person in the position of the Sheriff; a policy of authorizing or permitting unlimited discretion in deciding what type of medical care was to be provided to inmates; and a policy of inadequate training in making decisions regarding the care of inmates."

Initially, we note that although Trout alleges that Hancock County had an express policy which caused a violation of his constitutional rights, in his memorandum, Trout did not cite to or reference any specific written medical treatment or inmate safety policies of the Hancock County Jail. We observe that along with his memorandum, Trout filed a copy of the Hancock County Sheriff's Department Operations Manual and the Sheriff's answers to interrogatories, in which the Sheriff responded that Policy # 17 in the manual contained a prisoner medical treatment policy. However, Trout did not apprise the court in his memorandum that he was relying on either the manual or a specific policy within it that he claimed was unconstitutional. Ind.Trial Rule 56(C) requires each party to a summary judgment motion to specifically designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. Further, the opposing party must designate to the trial court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. T.R. 56(C). As long as the trial court is apprised of the specific material on which the parties rely either in support of or in opposition to the motion then the designation requirement has been met. *Nat'l Bd. of Examiners v. Am. Osteopathic Ass'n* (1994), Ind.App., 645 N.E.2d 608, 615. Here, Trout simply alleged that various express policies existed but did not mention any specific evidence to support his allegations. Thus, because Trout failed to designate evidence to support his contentions, he did not establish a genuine issue of material fact that an express jail policy existed which resulted in a deprivation of his constitutional rights.

Notwithstanding Trout's failure to designate an express policy, we will review the applicable written policies contained in the Hancock County Sheriff's Department Operations Manual, that Trout filed along with his memorandum in response to the

motion to dismiss, to determine if the enforcement of those policies caused a deprivation of his constitutional rights. One of the provisions in the manual is a medical policy which provides that "[i]f emergency medical ... treatment is necessary, the inmate will be transported by jail officials or ambulance to Hancock Memorial Hospital Emergency Room...." R. at 237. Although this is an express written policy, we cannot see how enforcing this policy would cause a constitutional deprivation. The Sheriff has a duty to provide adequate medical treatment and this policy, which requires transporting an inmate to the emergency room for emergency medical treatment, is a valid means for the Sheriff to satisfy that duty.[4] *Iglesias v. Wells* (1982), Ind.App., 441 N.E.2d 1017, 1019. Accordingly, Trout has failed to raise a genuine issue of material fact regarding the existence of an express governmental policy that caused a constitutional deprivation.

Next, we look to see whether the Sheriff acted pursuant to a custom or widespread practice at the jail that would subject Hancock County to liability under § 1983. Initially, we observe that the record is devoid of evidence of any other incidents in which an inmate was denied appropriate medical treatment. Further, there is nothing in the record to indicate that any inmate had ever experienced problems with Buie or that an inmate had ever attacked another inmate in the jail. Rather, Trout appears to claim that the single incident in the present case, of Buie attacking Trout, establishes various customs at the jail. However, proof of a single incident is not sufficient to establish governmental liability for a policy or custom. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436-37, 85 L.Ed.2d 791 (1985). Thus, Trout failed to specifically designate any evidence and the record itself contains no evidence to support his contentions that the Sheriff acted pursuant to a governmental policy or custom which resulted in a violation of Trout's constitutional rights.

Finally, we must determine whether Trout's alleged constitutional injury was caused by a person with final policymaking authority. In the present case, although the Sheriff is a final policymaker, there is no evidence establishing that he made the decisions to house Buie and Trout in the same open cellblock or to provide medical care to Trout. Rather, Trout concedes in his appellate brief that "the Sheriff ... *through his deputies,* ... made the decision not to segregate Buie from the general population of the jail and the decision to have Trout treated for a minor laceration to the nose." Appellant's Brief at 19 (emphasis added). The Sheriff's deputies do not have final policymaking authority. Instead, their duties are to carry out the policies made by the Sheriff and other policymakers. As such, Trout has failed to present evidence raising a genuine issue of material fact that a person with final policymaking authority caused his alleged constitutional injury.[5] Because Trout failed to demonstrate a genuine issue of material fact regarding the existence of any of the three instances in which Hancock County could be held liable under § 1983 for its policy or custom, the court properly granted partial summary judgment in favor of the Sheriff on Counts IV and V.[6]

**4.** The operations manual also contains an express policy which provides that the Sheriff shall make a plan for classifying and assigning inmates to living areas. R. at 244. However, the record does not contain a copy of the Sheriff's express classification plan. Without the plan, we cannot speculate as to whether the plan, when enforced, would result in a constitutional deprivation.

**5.** For § 1983 purposes, the Sheriff in his official capacity cannot be held liable for the actions of his deputies under a theory of respondeat superior. *Baxter,* 26 F.3d at 734.

**6.** We reiterate that in order to hold a governmental entity liable under § 1983, the plaintiff must show that the official was acting pursuant to a governmental policy or custom. On the other hand, to hold the official liable in his individual capacity, the plaintiff must show that the official acted with deliberate indifference to the plaintiff's constitutional rights. In the present case, Trout only sued the Sheriff in his official capacity and, as we have concluded, Trout failed to designate any evidence to establish that the Sheriff was acting pursuant to a county policy or custom. As a result, Hancock County cannot be held liable under § 1983. Further, because Trout did not sue the Sheriff in his personal capacity, we need not address Trout's arguments that the Sheriff acted with deliberate indifference

### III. Negligence

Next, we turn to Trout's contention that the trial court erred in granting summary judgment on Counts II and III of his amended complaint.

### A. Count II

In Count II, Trout claimed that the Sheriff was negligent in that he knew or should have known that Buie was dangerous yet failed to segregate him from the other inmates and that he breached his duty to provide appropriate medical care. On appeal, Trout asserts that summary judgment was improper because genuine issues of material fact exist regarding whether: 1) the Sheriff was negligent in providing medical treatment, 2) the Sheriff was negligent in failing to segregate Buie, and 3) Trout provoked the attack and was thus contributorily negligent.

To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Summary judgment is generally inappropriate in negligence actions. *Barsz v. Max Shapiro, Inc.* (1992), Ind.App., 600 N.E.2d 151, 152. However, if the facts of the case are not in dispute, summary judgment is appropriate to test the law of a negligence action. *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.* (1992), Ind.App., 590 N.E.2d 1067, 1071.

First, we address Trout's contention that a material issue of fact exists as to whether the Sheriff was negligent in failing to provide adequate medical care. The Sheriff has a statutory duty to "take care of the county jail and the prisoners there." IND. CODE § 36-2-13-5(a)(7). Indiana courts have held that a sheriff, who is charged with the care and custody of a prisoner, has a duty to exercise reasonable care to preserve

his prisoner's health and safety. *Iglesias,* 441 N.E.2d at 1019. This duty includes the provision of reasonable medical care. *Health & Hospital Corp. v. Marion County,* (1984), Ind.App., 470 N.E.2d 1348, 1358.

Here, after noticing that Trout was cut and bleeding, the deputies immediately transported Trout to the Hancock Memorial Hospital and placed him in the care of a physician. As the record reveals, the deputies' actions were in accordance with the jail's emergency medical treatment policy. Nevertheless, Trout claims that "[t]he Sheriff cannot in good conscience argue that providing Trout with stitches was an appropriate response to the broken nose suffered by Trout while in the Sheriff's custody." Appellant's Brief at 4. However, there is no evidence in the record showing that the Sheriff knew or should have known that Trout's nose was broken, that the emergency room of the Hancock Memorial Hospital had a reputation for not providing appropriate medical care, or that the physician who treated Trout often misdiagnosed ailments. Therefore, the record establishes that the Sheriff provided Trout with immediate medical treatment for his injuries and fulfilled his duty to exercise reasonable care to preserve Trout's health. Because Trout failed to set forth any evidence raising a genuine issue of material fact regarding whether the Sheriff breached his duty by providing inadequate medical treatment, the trial court properly granted summary judgment in favor of the Sheriff on the negligent medical treatment claim.

Next, we turn to Trout's contention that the Sheriff failed to exercise reasonable care to keep his prisoners safe from harm when he placed Buie in an open cellblock with other inmates. When a sheriff, who has custody of a prisoner, has knowledge of facts from which he may conclude that the prisoner may harm himself or others, the sheriff must use reasonable care to keep his prisoners safe and free from harm. *Iglesias,* 441 N.E.2d at 1021 (citing 60 Am.Jur.2d § 17 Penal & Correctional Institutions (1972)). In the present case, Trout claims that the Sheriff knew that Buie was dangerous because

to his constitutional rights. *See Kentucky v. Graham,* 473 U.S. at 165–67, 105 S.Ct. at 3104–05.

the Sheriff knew that Buie had been charged with murder, arson and conspiracy to commit murder. Further, Trout asserts that Buie's Hancock County Jail booking report, which contained the notation "USE CAUTION," alerted the Sheriff to Buie's dangerous propensities. R. at 247. The Sheriff, however, counters that he had no reason to know that Buie posed a risk to the other inmates and thus, he was not negligent. Moreover, the Sheriff asserts that even if he were negligent, Trout was contributorily negligent and, therefore, is barred from recovery.

In the Sheriff's affidavit, he stated that where a pre-trial detainee is young and charged with a serious offense, it was his experience that such an individual posed an increased risk of escape. R. at 306. Further, the Sheriff stated that if an individual has an assault history or poses a risk to other inmates, the phrase "Isolation" or "Placement in Holding Cell" would be noted on the booking report. R. at 306. Thus, the Sheriff claims that the only knowledge about Buie that he gained from the notation on the booking report was that Buie was an escape risk, not that he was dangerous. However, the booking report also reveals that Buie was charged with murder, arson, and conspiracy to commit murder. Thus, from the evidence presented, we find that genuine issues of material fact exist as to whether the Sheriff knew or should have known that Buie had dangerous propensities and whether the Sheriff failed to exercise reasonable care by not segregating Buie from the rest of the inmates.

■ Furthermore, we also find that a question of material fact exists as to whether Trout provoked Buie to attack him and, thus, was contributorily negligent. The parties do not dispute that Indiana's Comparative Fault Act does not apply to an action against a governmental entity such as the Sheriff of Hancock County.[7] Thus, if Trout were found to be contributorily negligent, he would be barred from recovery. *Roddel v. Town of Flora* (1991), Ind.App., 580 N.E.2d 255, 259, *trans. denied.* Contributory negligence is generally a question of fact for the jury where the facts are subject to more than one reasonable inference. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, 207. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law. *Id.* Indiana courts have found contributory negligence as a matter of law in cases in which the voluntary conduct of the plaintiff exposed him to imminent and obvious dangers which a reasonable man exercising due care for his own safety would have avoided.[8] *Id.*

On the morning of the incident, Trout took a piece of toast from one of Buie's breakfast trays because Trout believed the tray belonged to him. Buie ordered Trout to give the toast back to him. Trout, in response, stomped his foot and told Buie to get away from him. Buie then grabbed Trout by the hair and punched him in the face several times. The Sheriff claims that Trout's actions of taking the toast and stomping his foot on the ground provoked Buie to attack Trout and thus, constituted contributory negligence. The Sheriff further asserts that Trout testified that he knew that Buie had been charged with murder, arson, and conspiracy to commit murder, that Buie was much taller and heavier than Trout, and that Buie had bragged about being in the Marines and that he could kill a man with his bare hands. Thus, the argument continues, Trout's voluntary conduct in taking the toast and stomping his foot exposed him to imminent and obvious dangers which a reasonable man exercising due care for his safety would have avoided. Trout responds that his actions were reasonable and did not provoke Buie to attack him, thus, he was not contributorily negligent.

---

7. IND.CODE § 34-4-33-8.

8. Other jurisdictions have held that the failure of an inmate to exercise reasonable care for his own safety precludes recovery from his custodians. *See Johnson v. U.S.* (E.D.Va.1966), 258 F.Supp. 372, 377, (prisoner cannot instigate trouble with other inmates and then demand compensation from his keeper for injuries resulting therefrom). *See also Williams v. So. Ohio Corr. Fac.* (1990), Ohio App., 587 N.E.2d 870, 876.

We find that there is not just a single inference that can be drawn from the facts of this case regarding whether Trout's actions constituted provocation and contributory negligence. Thus, the question of Trout's contributory negligence cannot be determined as a matter of law. Rather, it is for the jury to decide whether Trout's actions of stomping his foot and taking the toast got him into the jam and rendered him contributorily negligent. Accordingly, we conclude that genuine issues of material fact exist regarding whether the Sheriff had knowledge of Buie's dangerous propensities and was, therefore, negligent in failing to segregate him and whether Trout's actions constituted provocation rendering him contributorily negligent. Hence, as to Count II, although summary judgment was properly entered in regard to Trout's claim of negligent medical treatment, the court erred in granting summary judgment on Trout's claim that the Sheriff was negligent in failing to segregate Buie from the other inmates.

### B. Count III

 Finally, we address Trout's claim that the court erred in granting summary judgment on Count III of his amended complaint in which he alleged that the Sheriff failed to pay for the surgery to repair his broken nose which Trout underwent after his release from jail. A sheriff is required to provide and pay for all appropriate and necessary medical care for his prisoners. *Health & Hosp.*, 470 N.E.2d at 1360. However, Trout cites no authority and we find no authority for the proposition that the Sheriff has a duty to reimburse an individual for medical care expenses, incurred after the individual is released from prison, resulting from an injury that occurred while the individual was in the care and custody of the Sheriff. The trial court's grant of summary judgment in favor of the Sheriff on Count III was proper.

In conclusion, we affirm the trial court's grant of summary judgment on all four of the counts in Trout's amended complaint, except for Trout's claim in Count II that the Sheriff was negligent in failing to segregate Buie from the other inmates. Accordingly, we

remand for a trial on the issues of whether the Sheriff was negligent and whether Trout's actions constituted contributory negligence.

Judgment affirmed in part, reversed in part, and remanded to the trial court for proceedings not inconsistent with this opinion.

NAJAM and RUCKER, JJ., concur.