**ECK & ASSOCIATES, INC.**
**Appellant–Plaintiff,**

v.

**ALUSUISSE FLEXIBLE PACKAGING, INC. and Reflectix, Inc., Appellees–Defendants.**

No. 48A05–9803–CV–127.

Court of Appeals of Indiana.

Oct. 26, 1998.

James N. Clevenger, Kizer & Neu, Plymouth, for Appellant–Plaintiff.

Christopher E. Baker, R. Brock Jordan, Rubin & Levin, P.C., Indianapolis, for Appellees–Defendants.

## OPINION

GARRARD, Judge.

### Case Summary

Eck & Associates, Inc. ("Eck") appeals an order granting summary judgment in favor of Alusuisse Flexible Packaging, Inc. ("Alusuisse"). We reverse and remand.

### Issues

Of the two arguments Eck presents for our review, one is dispositive: whether the trial court properly granted summary judgment based upon the contract being terminable at-will.[1]

---

1. The other argument Eck made was that even if the trial court correctly found that the contract was terminable at-will, the trial court erred in disposing of the entire case via summary judgment. That is, Eck claimed that Alusuisse breached the contract when ·it entered into a

### Facts and Procedural History

In August of 1989, Eck and Alusuisse entered into a Sales Representative Agreement ("contract") whereby Eck would sell Alusuisse's·product to Reflectix, Inc. ("Reflectix") in return for a 5% commission. The contract provided that it would continue indefinitely until terminated for just cause. Although the Reflectix account grew, conflicts arose among Eck, Reflectix, and Alusuisse.

In September of 1993, Alusuisse mailed a notice to Eck terminating the contract. Eck subsequently sued Alusuisse for breach of contract, alleging that Alusuisse lacked just cause for terminating the contract. Eck sued Reflectix for interference with the contract. In November of 1995, Reflectix filed a motion for summary judgment which was joined by Alusuisse. After a hearing, the trial judge initially denied the motion. Eck and Reflectix settled their portion of Eck's claim. Alusuisse then renewed its motion for summary judgment and a hearing on the matter was held.

In an order granting summary judgment, the trial court stated:

It is well-settled in Indiana that, if there is no ambiguity and the terms are plain and clear on the face of the contract, the court will not then construe the terms of the contract. The court also finds that since both parties participated in drafting the broker agreement, there is no presumption in favor of or against either party in construing the contract. The broker agreement which forms the basis of the agreement between [Eck] and Alusuisse ... is of indefinite nature in duration. Indiana law is settled that a contract providing for continuing performance and which has no termination date or which provides that it will last·indefinitely is terminable at-will by either party. See example, *House of Crane Incorporated v. H. Fendrich, Inc.*, 146 Ind.App. 478, 256 N.E.2d 578, 579 (Ind.App., 1970). In this case, the broker

separate contract with Reflectix,·excluding Eck, several weeks before the written notice of termination was sent to Eck. Alusuisse argued waiver, claiming that Eck failed to raise this issue to the trial court. We need not address these issues in view of our resolution of the at-will issue.

agreement has no termination date and, therefore, was terminable at-will by either party.... The designated evidentiary matter shows that there is no genuine issue as to any material fact and that Alusuisse ... is entitled to judgment as a matter of law....

Record at 679–80. In view of the trial court's decision that the contract was terminable at-will, the question of whether Alusuisse had just cause to terminate the contract was not reached.

Further facts shall be included where relevant.

### Discussion and Decision

Eck argues that the trial court erred in granting summary judgment because the parties agreed to, and did include in the contract, a security provision for Eck. That is, the contract was altered to permit termination only for just cause rather than with or without cause. Further, while the contract was not for a definite period *per se,* Eck points out that discontinued sales of product from Alusuisse to Reflectix would terminate Alusuisse's obligation.

Alusuisse argues that Eck did not comply with the designation rule. Specifically, Alusuisse asserts that Eck's designation contains only a list of documents, portions of depositions, and affidavits upon which Eck relied in responding to Alusuisse's motion for summary judgment. Alusuisse states: "Wholly absent from Eck's Designation is a list of each material issue of fact which it asserts precludes the entry of summary judgment in favor of [Alusuisse] and the evidence relevant thereto, as required by T.R. 56(C)." Alusuisse's brief at 4. Substantively, Alusuisse argues that the employment contract was for an indefinite term and thus was terminable at-will. In the alternative, Alusuisse argues that Eck provided no independent consideration, therefore making the job security provision unenforceable.

■ Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to establish two elements. *Squires v. Utility/Trailers of Indianapolis, Inc.,* 686 N.E.2d 416, 420 (Ind.Ct.App.1997). Once the movant has sustained this burden, the opponent must respond by setting forth specifically designated facts showing the existence of a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992).

■ The party losing in the trial court has the burden of persuading us that the trial court's decision was erroneous. *Beaman v. Smith,* 685 N.E.2d 143, 145 (Ind.Ct. App.1997). When reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Squires,* 686 N.E.2d at 420. We may not reverse a summary judgment on the basis of an issue of fact or evidence relevant thereto which was not specifically designated to the trial court. T.R. 56(H). Yet, if the trial court is apprised of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment, then the material may be considered. *National Bd. of Examiners v. Am. Osteopathic Ass'n,* 645 N.E.2d 608, 615 (Ind.Ct.App.1994).

■ Special findings are not required in summary judgment proceedings and are not binding on appeal. *Trout v. Buie,* 653 N.E.2d 1002, 1005 (Ind.Ct.App.1995), *trans. denied.* However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

■ Alusuisse correctly points out that Eck did not include a list of each material issue of fact which it asserted precluded the entry of summary judgment in favor of Alusuisse. However, Eck did not present such a list because Eck was not arguing that material issues of fact precluded summary judgment. Eck was arguing that given the facts as it set out, Alusuisse was not entitled to judgment as a matter of law.

What Eck did submit was a designation of evidence along with a response to Alusuisse's renewal motion for summary judgment. The designation of evidence listed the complaint, the answer, particular pages of various depo-

sitions, affidavits, the contract, various letters, e-mails, and "fax memos." Record at 610–11. Eck's response set out the facts as it understood them with specific cites to pages and lines of the multiple-paged designated materials. We are confident that the trial court was apprised of the specific material upon which Eck relied in opposing the motion for summary judgment. We are equally confident that the trial judge knew Eck was arguing that given the facts, the law did not support Alusuisse. *See Teitge v. Remy Constr. Co., Inc.,* 526 N.E.2d 1008, 1011 (Ind.Ct.App.1988) (noting that if an ambiguity in the parties' contract arises because of the language used in the contract and not because of extrinsic facts, then the contract is purely a question of law). Therefore, Alusuisse has shown no designation problem.

▆▆▆ Turning to the substantive issue of this case, we note that the determination of whether a party is employed at-will is a legal determination. *L. very v. Southlake Center for Mental Health,* 566 N.E.2d 1055, 1056 (Ind.Ct.App.1991).

Historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment at-will. If there is an employment contract for a definite term, and the employer has not reserved the right to terminate the employment before the conclusion of the contract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement. If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party.

*Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 717 (Ind.1997). The employment-at-will doctrine is a rule of contract construction, not a rule imposing substantive limitations on the parties' freedom to contract. *Id.* (citing *Streckfus v. Gardenside Terrace Co-op, Inc.,* 504 N.E.2d 273, 275 (Ind.1987)). If the parties include a clear job security provision in an employment contract, the presumption that the employment

is at-will may be negated. *Orr,* 689 N.E.2d at 717.

"Indiana courts have long recognized and respected the freedom to contract." *Trotter v. Nelson,* 684 N.E.2d 1150, 1152 (Ind.1997). Our supreme court recently re-emphasized a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." *Continental Basketball Assoc., Inc. v. Ellenstein Enterprises, Inc.,* 669 N.E.2d 134, 139 (Ind.1996). This reflects the principle that it is in the best interest of the public not to unnecessarily restrict peoples' freedom of contract. *Castillo–Cullather v. Pollack,* 685 N.E.2d 478, 483 (Ind.Ct.App.1997), *trans. denied.*

▆▆▆ "Contract construction is a question of law for the court." *Smart Corp. v. Grider,* 650 N.E.2d 80, 83 (Ind.Ct.App.1995), *trans. denied.* The primary and overriding purpose of contract law is to ascertain and give effect to the intentions of the parties. *Id.* If the intention of the parties can be gleaned from their written expression, that intention must be effectuated by the court. *Id.* The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Id.*

▆▆▆ During negotiations, Alusuisse presented its standard form contract. Alusuisse's form contract stated in paragraph eight that the contract could be terminated by either party at any time upon sixty days' written notice "for any reason, with or without cause." Record at 588. Paragraph nine of the form contract stated that "Broker shall operate at, and sell only to accounts assigned to him which may, in the Company's discretion, be changed from time to time as the Company deems advisable." Record at 588–89. However, Eck negotiated to modify paragraphs eight and nine. The final contract, signed by both parties on August 4, 1989, included the following provisions:

1. *Nature and Term of Service.* [Alusuisse] agrees to engage the broker [Eck] as an independent contractor and [Eck] agrees to act as Broker for [Alusuisse] in the business of selling products produced by Alusuisse ... This agreement shall

commence on the 4th day of August, 1989, and shall continue indefinitely, unless and until terminated by either party as hereinafter provided.

2. *Duties of Broker.* During the continuance of this agreement, the Broker shall devote such time as is necessary to the sale of the products of [Alusuisse], and shall use his best endeavors to promote its business and welfare. [Alusuisse] recognizes, in accordance with the Broker's regular business practice, he shall represent other firms and companies, but it is specifically understood that the Broker is in no event selling the products of, or representing companies which are in competition with, the products sold and manufactured by [Alusuisse]. . . .

\* \* \*

8. *Termination—How Made.* This agreement may be terminated by either party *for just cause,* upon sixty (60) days written notice.

9. *Account.* [Eck] shall operate at, and sell only to Reflectix which is set forth on Exhibit "B".

10. *Nature of Relationship.* The relationship between the parties is that of a sales agent and independent contractor. [Eck] is authorized to accept an order on behalf of [Alusuisse]. To constitute a contract for sale, all orders taken by [Eck] must be duly acknowledged and accepted by [Alusuisse] at its respective authorized offices. Nothing contained in this agreement shall be construed as creating an employer/employee relationship between [Eck] and Alusuisse. [Alusuisse] will indemnify and hold harmless [Eck] against any and all claims for damages which may arise as a result of [Alusuisse's] products, plant or personnel.

Record at 23–29 (emphasis added).

In October, 1990, Joe Baksha, the newly appointed general manager of Alusuisse, visited Reflectix. There, Baksha discussed the proposition that if the contract with Eck were terminated and Reflectix were on a direct selling basis with Alusuisse, Alusuisse could offer Reflectix a lower price. Reflectix agreed. Consequently, on November 1, 1990, Baksha sent Eck a letter stating that since Reflectix wanted a direct purchasing arrangement, Alusuisse would exercise its rights to assign the account to an Alusuisse company employee. A November 15, 1990 letter from Eck asserted that the contract with Eck, unlike a standard Alusuisse form contract, did not permit unilateral reassignment. Thus, such a reassignment would be a breach of the contract.

Thereafter, Alusuisse did not attempt a unilateral reassignment. Instead, Eck continued brokering what was a difficult account between Reflectix and Alusuisse. Alusuisse did not try to end the contract with Eck until Alusuisse thought it had just cause. Specifically, in a September 27, 1993 letter to Eck, Alusuisse stated that it was terminating the contract and set out its reasons for doing so. Alusuisse explained that Reflectix's president had informed Alusuisse that Reflectix was ceasing its business with Alusuisse in part due to the "unsatisfactory and intolerable manner" in which the account was being handled by the Eck broker. Record at 365. Reflectix's president had stated that "Mr. Ottow [the broker] has poisoned the atmosphere" between Alusuisse and Reflectix by his routine "abrasiveness" and his "bad mouthing" of Alusuisse to Reflectix employees, which has been interminable and frequent. *Id.* Within that same termination letter, Alusuisse's stated, "[w]e have, quite clearly, the antithesis of what one would expect from a representative who had agreed to 'promote [Alusuisse's] business and welfare.'" *Id.*

The aforementioned facts indicate that Alusuisse traditionally cultivated broker relationships which were terminable at-will. However, in this case, Eck did not agree to a terminable at-will contract. Instead, Eck submitted the modified contract for Alusuisse's approval. Alusuisse opted to agree to the changes and signed the contract which contained a just cause termination provision, but lacked a unilateral-discretion-to-reassign-accounts provision. Had Alusuisse intended the discretion which at-will termination affords, Alusuisse could have refused to deal with Eck. No assertion of unequal bargaining power was made. However, for reasons

about which we may only speculate, Alusuisse chose to forego the at-will flexibility. The facts further reveal that once reminded of its unique contract with Eck, Alusuisse abided by its terms and did not try to terminate the contract until it arguably could demonstrate just cause.

We conclude that the parties freely bargained for the just cause provision. We further conclude that it represented their intentions at the time of the contract. Because the "power to interpret contracts does not extend to changing their terms[,]" *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind.1997), we are not at liberty to redact the just cause clause from the contract. To reach any other conclusion would be to render meaningless a provision to which both parties agreed. *See Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277, 1280 (Ind.Ct.App.1998) ("Courts should make all attempts to construe language in the contract so as not to render any words, phrases, or terms ineffective, or meaningless."). Accordingly, Eck and Alusuisse's agreement to the just cause provision rebutted whatever presumption of at-will employment may have been raised by virtue of the term "indefinitely" in paragraph one of the contract.

We are unpersuaded by the argument that a job security provision needs adequate independent consideration to rebut the at-will employment presumption. In *Streckfus*, our supreme court stated:

Nevertheless, we are cognizant that the employment at-will doctrine is a rule of contract construction, not a rule imposing substantive limitations on the formation of a contract. Therefore, should parties to an employment contract choose to include a job security provision in the contract, enforcement of such a provision would not necessarily conflict with the employment at-will doctrine. *The law concerning the adequacy of consideration and the necessity for mutuality of obligation in such situations is presently undergoing widespread review by numerous commentators and courts of other jurisdictions.* Under the facts of the instant case, however, this issue is not directly presented. We grant transfer and find that, as a matter of law, the Employment Agreement did not contain any job security provision which altered the employment at-will relationship, and thus *it is presently inappropriate for us to address the questions concerning whether separate and independent consideration should continue to be a prerequisite to the enforceability of an express job security provision.*

*Streckfus*, 504 N.E.2d at 275–76 (citations omitted) (emphases added). Since then, our supreme court has not been faced with an opportunity to address whether separate and independent consideration should continue to be a prerequisite to the enforceability of an express job security provision. That issue is squarely before us today.

Recalling that our supreme court has recently reiterated: "If the parties choose to include a clear job security provision in an employment contract, the presumption that the employment is at-will may be rebutted[,]" *Orr*, 689 N.E.2d at 717, and that parties' freedom to contract has continued to be highly valued, we see no reason to require independent consideration for an explicit, freely bargained for, written, just cause provision. In making this decision, we recognize the general principle that the at-will presumption applies to both oral and written employment contracts. *See Pepsi–Cola General Bottlers, Inc. v. Woods*, 440 N.E.2d 696, 697 (Ind.Ct.App.1982). However, despite that recognition, we distinguish the cases dealing with adequate independent consideration.

The adequate independent consideration cases are inapplicable here, not due to their lack of a written contract, but due to their lack of explicit, freely bargained-for just cause provisions. They simply did not address the current situation. They involved employees arguing that some other consideration transformed what normally would have been an at-will employment situation into one that could only be terminated for just cause. *See Wior v. Anchor Industries, Inc.*, 669 N.E.2d 172, 173 (Ind.1996) (concluding that because contract was not reduced to writing, it was unenforceable, and that without a valid contract for permanent employment, Wior was employed at-will); *Romack v. Public Service Co.*, 511 N.E.2d 1024, 1026 (Ind.1987)

(concluding that despite the lack of a written just cause provision, employer cannot arbitrarily fire employee when employer knows that employee had former job with assured permanency or assured nonarbitrary firing policies and was only accepting new job upon receiving assurances that new employer could guaranty similar permanency); and *Ohio Table Pad Co. v. Hogan*, 424 N.E.2d 144, 145 (Ind.Ct.App.1981) (statement that the "contract was an indefinite one and, as such, was not rendered unenforceable by the statute of frauds" indicates no written contract, let alone a freely bargained for, explicit, just cause provision, involved). In the present case, the freely bargained-for just cause provision had already transformed an otherwise at-will situation to one requiring termination only for just cause. Therefore, no additional consideration was necessary.[2]

It was error to determine that as a matter of law the contract was terminable at will, with or without cause.

■ Regarding whether Alusuisse had just cause to terminate the contract, Eck designated several pieces of evidence. However, the question of whether Alusuisse had just cause to terminate Eck is one of fact. *See Gibson v. Review Bd. of the Indiana Dep't of Workforce Dev.*, 671 N.E.2d 933, 935 (Ind.Ct.App.1996). Being a question of fact, the just cause determination must be made by the fact finder.

Reversed and remanded.

RILEY and RUCKER, JJ., concur.

---

2. *Bentz Metal Products Co., Inc. v. Stephans*, 657 N.E.2d 1245, 1248 (Ind.Ct.App.1995) decided whether a cause of action for wrongful termi-

nation is available to an employee covered by a collective bargaining agreement. Thus, it is inapposite to the present issue.